[Cite as *In re L.W.*, 2019-Ohio-5291.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: L.W.

C.A. No.     19CA011493

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     17JC52411

DECISION AND JOURNAL ENTRY

Dated: December 23, 2019

TEODOSIO, Presiding Judge.

{¶1}   Appellant, D.W. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Lorain County Children Services ("LCCS").  This Court affirms.

I.

{¶2}   Mother is the biological mother of the only child at issue in this appeal: L.W., born August 1, 2014.  The father of L.W. did not appeal the trial court's judgment.

{¶3}   During December 2008, Mother's parental rights to two older children were involuntarily terminated in West Virginia.  The basis for the removal and ultimate termination of parental rights was Mother's unstable mental health and domestic violence in the home.  Years later, Mother gave birth to another child, but later relinquished custody of that child during another juvenile case in West Virginia.

{¶4} Mother also has a children services history with L.W. while she lived in Maryland because of domestic violence in the home and Mother's failure to meet L.W.'s special medical needs. L.W. has a genetic chromosome abnormality that has resulted in developmental delays in her speech and motor skills and causes her to suffer seizures.

{¶5} LCCS first became involved with Mother and L.W. on August 15, 2017. Mother took L.W. to a hospital emergency room, attempting to seek medical attention for the child, but Mother was behaving erratically and irrationally. Because police and hospital personnel feared that Mother posed a safety risk to L.W. and herself, Mother was involuntarily committed to the hospital psychiatric ward. LCCS was unable to find any suitable relative or friend to care for L.W., so the child was placed in the emergency temporary custody of LCCS.

{¶6} After the 72-hour involuntary hold expired, Mother signed an agreement to remain in the hospital for continued psychiatric treatment. During her hospital stay, she reported that she had a history of mental illness and had run out of her prescribed psychiatric medication. Mother was diagnosed with bipolar disorder with psychotic symptoms and was given several psychiatric medications, including one to control her delusional thoughts. Her behavior improved significantly while she was hospitalized. The hospital discharged Mother after six days with prescriptions for two psychiatric medications and instructions that she engage in ongoing counseling, but she did not follow through.

{¶7} L.W. was later adjudicated a neglected and dependent child and placed in the temporary custody of LCCS. The original case plan focused on Mother addressing her unstable mental health. LCCS later amended the case plan to add a substance abuse component because Mother was arrested on a charge of possession of cocaine. Mother admitted that she began using cocaine because she was stressed out about losing custody of L.W.

{¶8}     During the following year, Mother made little progress on the goals of the case plan.  Mother eventually obtained a mental health assessment but only sporadically followed through with recommended counseling and psychiatric medication.  For approximately six months, Mother engaged in counseling with one provider, but she attended only 10 of the 23 appointments that were scheduled.  Moreover, Mother repeatedly changed mental health providers and, perhaps as a result, her medications were changed numerous times.  Mother did not take any steps to comply with the substance abuse component of the case plan.

{¶9}     On October 22, 2018, LCCS moved for permanent custody of L.W.  Following a hearing on the motion, the trial court found several alternative first-prong grounds for permanent custody and concluded that permanent custody was also in the best interest of L.W.  Consequently, it terminated parental rights and placed L.W. in the permanent custody of LCCS.  Mother appeals and raises one assignment of error.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT MISAPPLIED [R.C.] 2151.414 BY CITING ALL THE REASONS [MOTHER] WAS LOSING CUSTODY AND FAILING TO NOTE THAT THEY ALL STEMMED FROM HER MENTAL ILLNESS WHICH SHE HAD ADMITTED AND HAD BEEN MAKING IMP[RO]VEMENTS[,] THUS REFUSING TO ALLOW HER  MORE TIME TO REGAIN GOOD HEALTH AND THUS HER CHILD.

{¶10} Mother's sole assignment of error is that the trial court erred in granting permanent custody to LCCS.  Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused,

neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶11} The trial court found that the first prong of the permanent custody test was satisfied for several alternative reasons, including that Mother's parental rights to other children had been involuntarily terminated. *See* R.C. 2151.414(E)(11). Mother does not challenge that finding by the trial court, which was fully supported by the record. Mother's parental rights to two older children were involuntarily terminated on December 22, 2008 because of Mother's unstable mental health and domestic violence in the home.

{¶12} Next, the trial court found that permanent custody was in the best interest of L.W. When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the need for permanence in the child's life, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.,* 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. Of relevance here, Mother's parental rights had been involuntarily terminated as to two older siblings of L.W. *See* R.C. 2151.414(E)(11).

{¶13} During this case, Mother's interaction with L.W. was limited to supervised visits that were scheduled for two hours, once a week. LCCS cancelled a few visits because of bad weather or L.W. being sick. Mother, however, cancelled nearly one third of her scheduled visits

with her young child. During this case, Mother moved to another county and her primary stated reason for missing visits was trouble finding transportation.

{¶14} Mother was also encouraged to attend L.W.'s medical and therapy appointments to learn how to appropriately deal with the child's special needs, but she did not. Consequently, the caseworker opined that Mother's ability to address L.W.'s medical needs and developmental delays did not improve during this case.

{¶15} With her foster family, however, all of L.W.'s basic and special needs were being met. L.W. was comfortable in that home and, through consistent therapy and tactics used in the foster home, the child's developmental delays had improved significantly. L.W. is closely bonded to the foster family's children, particularly the child who is closest in age. The foster family has an extensive family support system and expressed interest in adopting L.W. if LCCS received permanent custody.

{¶16} L.W. was only four years old at the time of the hearing and the guardian ad litem did not believe that she was mature enough to express her own wishes. The guardian ad litem testified that she believed that permanent custody was in the best interest of L.W. because Mother had not made significant progress on the goals of the case plan.

{¶17} L.W.'s custodial history has included nearly 18 months living outside Mother's custody during this case. Her custodial history prior to this case is unclear because Mother resided in Maryland and there was little evidence presented at the hearing about the family's involvement with children service agencies there except that there had been an open case.

{¶18} Several witnesses testified that stability was critical to addressing L.W.'s medical problems and developmental delays. L.W. needed a legally secure permanent placement.

Mother was not in a position to provide the child with a suitable home and LCCS had been unable to find another relative who was willing and able to do so.

{¶19} Finally, the trial court was also required to consider the fact that Mother's parental rights to three older siblings had been terminated and she had failed to present clear and convincing evidence that, despite those prior terminations, she was able to provide L.W. with a suitable home. *See* R.C. 2151.414(D)(1)(e); R.C. 2151.414(E)(1). Although Mother testified that she was prepared to provide L.W. with a stable home, the evidence demonstrated otherwise. Mother had not stabilized her mental health and had not even begun to address her admitted use of cocaine to deal with her stress. Although Mother stated that she had obtained stable housing, she had failed to allow the caseworker or the guardian ad litem to see her current home. Moreover, Mother admitted that she was financially dependent on her current boyfriend, whom she had known for only four months.

{¶20} Consequently, Mother has failed to demonstrate that the trial court's permanent custody decision was not supported by the evidence. Her sole assignment of error is overruled.

III.

{¶21} Mother's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

MARC STOLARSKY, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and EMILY W. KIRSCH, Assistant Prosecuting Attorney, for Appellee.

MARYANN MARTZ, Guardian ad Litem.